We'll have our third case of this morning. It is still this morning in the East Coast. Numbers 20-1750 and 1751 In Re Weinstein Company Holdings, LLC, Spyglass Media Group v. Bruce Cohen Productions et al. Ms. Butcher and Mr. Califano. And Ms. Butcher, whenever you're ready. Good morning, Your Honor. May it please the court. My name is Angela Butcher. I represent Bruce Cohen and the other talent parties in With the court's permission, I would like to reserve three minutes of my time for rebuttal. That's fine. Thank you, Your Honor. This appeal presents a straightforward issue of how a bankruptcy court should decide whether a contract is executory, such that it may not be simply purchased free and clear during the bankruptcy, but must be assumed in a sign. Is this contract non-executory right on its face? No, Your Honor. In fact, this contract is executory on its face. And so as I understand the testing we have to be executory is when material obligations remain substantially unperformed on both sides. Is that correct? That is correct, Your Honor. So then the question becomes, are there material obligations that Mr. Cohen still needs to do? And if so, that makes it executory. But why don't you tell me what you think are the material obligations yet to be performed? Yes, Your Honor. Under this court's decision in General Data Com, an obligation is material if the parties agree the obligation is material on the face of the contract. Here in paragraph three of the Cohen agreement, it was agreed that the breach of any term by Mr. Cohen would release the debtor from further performance under the contract, including the payment of contingent compensation. Yeah, usually you see that in other cases where comes up in a remedies provision. Here it's talking about the paragraph is called contingent compensation. And so if the picture is produced with the artist as the producer, that would be Cohen, and the artist fully performs all required services and in relation to the picture and are not otherwise in breach or default thereof, artist shall be entitled to receive the following contingent compensation. So essentially, what we're talking about here in terms of real dollars is what about $400,000 that would be pre-petition? That's correct, Your Honor. There's about $400,000 owed from the pre-petition period. And then there is ongoing monies that will be owed as the film in effect, implied in that sentence I just read, not otherwise in material breach or default thereof. The term material, Your Honor, refers to a term that if breached would excuse the future performance of another party. And here the parties have agreed that any breach by Cohen will excuse the future performance of the debtor. And therefore the parties have agreed on the face of the agreement that these terms are material. But it's not all performance. Doesn't that distinguish this from General Datacom? Their breach led to complete termination of benefits. And here what we have as a result of a breach is just the contingent compensation, right of first refusal. Well, what did it dictate the result here? Correct, Your Honor. What this excuses here is the future performance under the contract. And there really aren't other remaining terms left for the debtor to perform other than those that would be excused by this breach. So if you consider the remaining terms for both sides on the petition date, you look at what were the obligations for Cohen and what were the obligations for the debtor. And any breach of any of Cohen's remaining obligations would excuse the performance of any of the debtor's remaining obligation. Therefore, those terms as of the petition date were material. Even if they're ancillary to the main substance of the contract? Well, of course, we disagree as to what the main substance of the contract is. But to your point, Your Honor, as this court said in footnote 12 of General Datacom, even if those terms would be considered immaterial under otherwise applicable state law, if the parties have agreed that the their contract, then those terms are material on their face, and the court should respect the determination of the parties. But but I mean, isn't isn't there a difference, though, between having a material obligation to do something under the contract and having a right under the contract? I mean, rights and obligations are different, right? Obligations are so closely linked to performance. Rights are different. They can be options, it can be all these other things. And so don't you have to show that there was not just other rights under the contract that were that were still lingering around? Don't you have to show that there was additional performance that had to be done, as opposed to just people having additional rights? And if you have to show that what additional performance is left to do here? Yes, Your Honor, we do agree that there must be additional performance owed by both parties on the petition date. And I think you and I can agree for a moment that the obligation the performance from the debtors to pay contingent compensation. So looking, Your Honor, now at the performance that was due from Bruce Cohen, as of the date, we've listed multiple examples in our brief, but I'd like to focus our attention right now on the indemnification provision, which is in paragraph 15 of the Cohen agreement, which is at a 2333 of the appendix, Your Honor, in paragraph 15, includes an extremely broad indemnification provision that itself refers to the representations and warranties that Cohen made both in this agreement and in any other agreement between the parties. So if we look up at paragraph 14 of the Cohen agreement, which is on the same page, Your Honor, Bruce Cohen is obligated to indemnify for any breach of any right of any other person. But that whatever performance is triggered there, it's subject to conditions precedent, right? I mean, it's not substantially underperformed until a condition precedent triggers, right? It's an indemnification of claims. And I mean, don't you have to show, okay, that's not just a right of indemnification, but there was some something that triggered that right down the road of performance as opposed to just saying, someday, maybe this might get triggered, prompting obligations to perform? Well, a right of one party can on the flip side be seen as an obligation of another. So of course, here, the debtor has a right to indemnity, but Cohen has an obligation to indemnify. Subject to conditions precedent. Yes, Your Honor. It is a contingent obligation, Your Honor, but so is the right to pay the contingent compensation. It's based on the performance of the movie. And here it is undisputed that as of the petition date, Cohen had this obligation to indemnify, and that's a valuable right. And we know that because in this contract, the parties agreed that were he to breach that right, then he would stop being paid, which is the most fundamental of his rights under the contract. But hasn't the statute limitations likely run on most, if not all of the third party claims that can be brought? Well, Your Honor, that is an interesting question. But we have to remember that we're looking at this as of the petition date, which was less than five and a half years after the film was produced. And this film was released internationally, Your Honor. And so I don't think it stretches the imagination to believe that there could be a statute of limitations in any jurisdiction in the world that is longer than five years and four months. And so as of the petition date, this was a real right that was a value to the debtor, as evidenced by the fact that Spyglass wanted to take this contract. It believed that Cohen's obligations were of value to them, and that's why they're pursuing this contract. Can I just ask a really basic question, and maybe if you can't answer this on the spot, that's fine. Maybe you might get a chance to come But, you know, as I look at both appendix sites for the Cohen contract, A2328 and A1219, those are the two that I have. A1219 doesn't appear to be a final version of the contract. It appears to be a markup. And A2328 doesn't appear to be signed. And so I hate to take us down the road of authenticity and other things like this, but I sure feel a lot better when one of the elements of the test is to look at a contract, quote, on its face, quote, and I have a contract that is a markup, unsigned, and I have another, I'm using the word contract, purported contract that's unsigned. You don't do it now, but it does seem like if we're going to look at the face of a contract, it's really nice if I see something that looks signed. I understand, Your Honor. What I have in front of me is the version A2328. I'm happy to look at the version A2319 during the break if the court would indulge me. So what I can tell you is the version A2328 was put into the record by Spyglass as an attachment to their summary judgment motion. And they attached it to a declaration of one of their employees who purported to authenticate this document as the binding contract in this case. And so while I agree it would be if it was a better version of this contract with signatures, Your Honor, it is not disputed between the parties. This is the binding contract and that it was put forward by Spyglass in their motion for summary judgment. And they purported to authenticate it through their declaration. Let me go back over Mr. Cohen's obligations. I just want to, he doesn't retain any intellectual property in the picture that was released years ago, correct? That's correct, Your Honor. And so if the TWC were to breach the agreement, it wouldn't permit him to recover the intellectual property back, would it? Under this contract, no, Your Honor. He has given up the intellectual property rights. So, and then the next one I see is remaining up, he has remaining obligations is to refrain from seeking injunctive relief about the exploitation of the film. That's, that seems to be pretty immaterial. He has no claim to the intellectual property. I understand your position there, Your Honor. And my point is that because the parties agreed that any breach would terminate the responsibility of the debtor to continue. But what I'm saying is it's almost like 10 times 0 is 0. He has no claim to the intellectual properties. Therefore, he really can't seek injunctive relief with regard to exploitation because it's been given up. He doesn't have a right to seek the injunction. I agree, Your Honor, that he may not be successfully able to seek an injunction, but it doesn't prevent him from filing such a claim, which would require the debtor or spyglass to then impose the claim. And I think Mr. Cohen could have a colorable argument that although he gave up rights, he did so in return for promised compensation that under this hypothetical, Your Honor, was therefore breached. And so I think it would be up to a court in that case to determine whether that right to give up that obligation was material. But I think what we need to remember here is that the remedy for a material breach does not necessarily have to include the right to seek an injunction. And so giving up that particular remedy does not render a breach immaterial. In fact, the non-breaching party has the opportunity to select its remedy. And whether that's to seek an action for damages or to prevent further performance under the contract is at the option of the non-breaching party. Here, Your Honor, I think it is, although interesting and challenging to analyze which of these provisions would be considered material under state law or state law to apply. Here, Your Honor, the court need not go that far. If we look at the contract itself under General Datacom, because the contract says that a breach will excuse future performance, then the parties have agreed that these terms are material. And there is not your reliance on General Datacom and the reason that you questioned so forcefully. But how do you reconcile that with Exide emission products? And why shouldn't we look to that as for cabining General Datacom? Respectfully, Your Honor, I don't believe that Exide purported to cabin General Datacom. In fact, it did cite General Datacom approvingly at least two or three times in the beginning of that opinion. I believe that Exide was decided correctly and is valid binding opinion of this court where it applies. It simply doesn't apply here. In Exide, there was no argument or allegation by either party that the contract itself determined which terms were material because the breach of a term would excuse the future performance of another party. That issue simply wasn't presented in Exide. So Exide correctly moved to what we term is step two of the analysis, which is if the contract is not plain on its face, you look to other principles of state law to help you interpret a contract. Because that was a New York contract, they applied the New York substantial performance doctrine. And they did so carefully by examining the record and applying the factors stated in the restatement to each of the provisions of that contract. But Exide in no way purported to create any bright line rule or to change the court's decision in General Datacom, which of course it cited approvingly. But where are you in General Datacom? Are you talking about a holding or a dictum or what? What page are you on? Because I'm looking at page 623. And it says, in effect, referring back to the Columbia gas system case, while we have held that the determination of what constitutes a material breach is governed by relevant state law. And everything seems to talk about material. And you're saying, well, yeah, but you can contract around it. And other cases where they've contracted around it, they have pretty robust remedy sections. And here we have one sentence in a non remedies provision of the asset purchase agreement. So if I'm uncomfortable saying that that's enough, then there has to be something that's material. And I gone through at least some of the continuing covenants, etc, obligations of Cohen. And I'm not seeing anything that looks at looks to be particularly material. The last one I didn't mention was the he can't assign it without a basically, I guess, by the first refusal, but if I'm not mistaken, the restrictions on his ability to assign. Correct, your honor. And if I can address general data come first, your honor, I would direct you to page 623, where it says, Thus, if an eligible executive breached one of these provisions, it would excuse the future performance of general data come by contractual definition. Therefore, such obligations are material. I would then direct your attention, your honor, to footnote 12, which is if you're looking at the West lovers and printed at the very end, I have it. And it says, and it refers to their what they refer to as their dissenting colleague, but it was actually a concurring opinion, just for clarity. And they say, while that colleague has done a very thorough job of analyzing each obligation under state law, that colleague has erred by not relying on the terms of the face of the contract. And it says we are satisfied that the parties intended the provisions of six to be material, no further analysis is therefore required. And where their colleague erred was by substituting their own views on materiality for what the parties explicitly and formally agreed as being material and vital to their contract. And there is very much the same as what we have here, your honor, which is also the same as what happened in Hawker Beechcraft and a decision out of New York's performance of another party. And that case is clear that even if the terms would otherwise be immaterial, materiality is determined by the agreement of the parties. And so, so, so, I mean, I guess, I guess the thought is to just walk through what you think is breached here. I mean, it seems that there's conditions precedent that haven't triggered and rights and obligations that exist. But I mean, I don't think a person breaches something just because they say, oh, I might have a later right to do this. That right hasn't triggered yet. Therefore, I'm in breach. To clarify your honor, we are not taking the position that Mr. Cohen is in breach of any provision here. And I don't believe that that is the test. What we're trying to determine is as of the petition date, were there obligations that could be breached? And that if those were breached, would it? But if you force yourself back into the language of the contract, which you really, really, really want to do, and I understand why you really, really want to do that. The contingent compensation language says, and not otherwise in breach or default. And so it seems to me that if we want to start talking about underperformance on both sides, then there has to be some sort of trigger for both sides having underperformance. Respectfully, your honor, we're not taking the position that there has been underperformance by both sides, nor do I believe that there needs to be. What we're looking at is whether on the petition date, there's the potential for underperformance by either side, which is because material terms continue to exist. As of that date, there could be a situation. And I believe very often is that the countryman test, the countryman test, your honor, and I'll paraphrase because I'm not reading it, is that where the contract has been underperformed, meaning that there are remaining obligations on either side that could be breached. As of the petition date, the contract, I think that's too strong. That might be too strong. That might be too strong for country. Like, like, like, like, like, that's close to countrymen. But, but, but, but, but, but I think there might be a few parts that are carrying a little more weight in your formulation, in the notion of, I don't know that it's potential for underperformance. I think it's actual underperformance. And I don't know that the, I think that has to be right. Of course, your honor. And let me clarify. Underperformance in the way that term is used in countrymen does not equal breach. Underperformance means that obligations exist that have not yet been fully performed. It does not mean that you are yet in breach of those obligations. They could be future obligations or contingent obligations that have yet to become ripe to use that term. But the countryman test is, I mean, again, by Professor countryman, an executory contract is a contract under which the obligation of both the bankrupt and the other party to the contract are so far underperformed that the failure of either to complete performance would constitute a material breach, excusing performance of the other. And that's essentially what we adopted in Exide as the test. That's correct, your honor. And we don't quarrel with that definition. I would just like to explain your honor that the countryman definition says that the contract has been so far under performed that the failure to perform looking forward, looking the future breach by failing to perform those obligations would render the contract materially unperformed or breached. And here, your honor, I think it is undisputed that it very often happens within the bankruptcy contract that there are contracts that have not been breached by either party as of the petition date, but they still have ongoing material obligations looking forward. The contract has yet to be fully performed. So speaking of other contracts, does this mean that any contract with an indemnification provision for the life of the contract would satisfy the countryman test? No, your honor, it does not. It does mean that in this case, your honor, because here, unlike in many other contracts, the parties explicitly provided that the breach of Cohen's indemnification obligation, like the breach of any other obligation would excuse future performance. And then there may be many other contracts where there's an indemnification provision that if breached does not excuse future performance of the other party. For example, if you look at the other cases that were cited by ING and Mr. Califueno that involve performance contracts, some of those do have indemnification provisions, but in nowhere was it alleged that the indemnification provision itself, if breached, would excuse future performance of the other party. What about Exide itself? I mean, didn't we look there to things like the representations and indemnification that we have here is immaterial. In Exide, your honor, if I remember correctly, there were similar obligations that were indemnification and future assurance obligations, but the court in Exide determined that those obligations had expired under the terms of the contract. So that is different, your honor, than here. But even if these, even if the terms in Exide had not expired under the terms of the breach of those terms would excuse the future performance of another party, and that's the difference that we have. Let me just pick up on those two questions. Are you saying that on your reading, the Cohen contract is an executory contract forever? I believe that is our position, your honor, unless in the future something were happened to release Mr. Cohen from his remaining obligations under the contract, then because the indemnification provision is perpetual, and because the continuing compensation provision is perpetual, then there are perpetual material obligations on both sides of that contract. And that was determined by the parties at the time of the signing. Even if there won't be anything to indemnify for, even if that can be shown, even if there is nothing of any substance that remains, you're saying that makes it executory. Therefore, it has to be, if you want the benefits of it, it has to be assumed under 365 because it's executory. That seems to. Your honor, I don't, I don't think you need to go quite that far. As you just said, if it could be shown that the indemnification provision had expired due to the facts of the real world, for example, if spyglass had put on evidence to show that there is no legal obligation for which Mr. Cohen would be required to indemnify under any jurisdiction in the world, using the terms as laid out in this contract, I believe that would be a factual matter that the court could have considered on summary judgment. But your honor, that's not what happened here. So I've got no evidence whatsoever. But until that time, a contract structured like this would seem to be able to do pretty nicely as a workaround for the bankruptcy code. I don't see it as a workaround for the bankruptcy code. I see it as honoring the even even if one of the parties goes into bankruptcy, then then they they have a different status, at least until one of the parties could show that there will be no worldwide claims ever likely brought against them. And then we have, you know, I mean, that's kind of a hard thing to show, because some jurisdictions might have a more lax discovery rule than others. And, you know, they might say, well, five year statute of limitations, but with a discovery rule that might go much, much, much, much longer. And so before you know it, worldwide jurisdictions, all it takes is one with a lax discovery rule. And you might be in a situation where you can basically work around 365. And if you structure a contract this way, because that's that's what the parties wanted to agree to. I mean, that's, that's not that. I'm not pushing that too, too far down the road, am I? I understand your point, Your Honor. But I think we have to remember here that Spyglass chose to take this contract because it believed that it was a value to them and that Cohen's remaining obligations were a value. If Spyglass believed that there were no remaining obligations on behalf of Mr. Cohen, there's no reason for them to take this contract. In fact, as I believe we'll learn from the case being argued after mine, and I don't want to speak too much about that, Spyglass is going to take the position that they know very well how not to take a contract that they don't want. Here they wanted this contract because they believe that Mr. Cohen's obligations were of continuing value. And post-petition, they are paying the contingent compensation, are they not? They have now agreed to do that. That was not their initial position. But yes, Your Honor, they've agreed to pay contingent compensation on a going forward basis. Okay. Why don't we hear from Mr. Califano? And we've already had you up for about over 26 minutes. Thank you, Your Honor. I appreciate your time. Back in rebuttal. Thank you. Thank you, Your Honor. Tom Califano, DLA Piper, on behalf of Spyglass Media, formerly known as Lantern Entertainment. Your Honor, Spyglass was the purchaser of the Weinstein Company assets out of bankruptcy. And those assets consisted primarily of rights to a film library and the pertinent rights that came with it. One just question at the outset, why does Spyglass want to buy the Cohen agreement at all? Well, Your Honor, the fact that there are rights to be purchased under the contract does not in fact mean that it's executory. That's two questions down the road. Why does Spyglass want to buy the Cohen contract at all? Because, Your Honor, that Cohen contract represented a present transfer back in September 21, September 21, 2011, of the intellectual property that was provided under that work for hire contract. So those rights, that was a present transfer back then of that intellectual property. So then why, once the petition came down later on, do you want the Cohen agreement at all? Because, Your Honor, that is how those rights were transferred, okay? That contract is the transfer of the- But they were transferred pre-petition, right? No, the rights were transferred pre-petition, correct. And they became rights of the Weinstein Company, which my client purchased through the bankruptcy. Okay, so then if they were pre-petition rights and they're already purchased, why post-petition, when you go through with the sale, would you want the Cohen agreement at all? Because the Cohen agreement, Your Honor, is the evidence of that transfer and the rights that But if Cohen were to attempt to, having previously transferred his interest, subject to a $250,000 plus contingent compensation, then I guess, I mean, what he wants is the contingent compensation. You're saying, I'm not sure what you're getting out of this, is the point. You've already got the transfer. It's a done deal. It's pre-petition. Now we're post-petition. And why would you want to continue to pay contingent? I assume, maybe it's just goodwill. No, there was an amendment to the asset purchase agreement, Your Honor, whereby Spyglass agreed to pay the post-closing participation payments that related to the post-closing exploitation of the film. So that is why it's not, that is why they agreed and are paying those post-closing obligations, because that was an amendment to the APA in one of the series of amendments that occurred. So they contractually agreed to pick up that obligation, but solely for uses and exploitation when it owned the film. All right. Let's go through the obligations. They're claiming that, two things, that the remaining obligations are material. And if you don't think they're necessarily material on their own, look what we did in section three. We agreed that they are material because if there's any breach or default, then we don't have to perform, we can terminate. But Your Honor, I think it's a far, I would say that language in paragraph three is a far cry from rendering this particular provision and those continuing obligations to the extent they exist as material, Your Honor. It is not unusual for a contract to provide that the party is only obligated to pay so long as the other party is not in breach. I think the Butcher's argument is different, that let's assume for the moment they are immaterial, but you and I have agreed by contract that they are material, so material that if you're in breach or default, Cohen, he doesn't get his money if he's in any way in breach or default. So we've made an agreement, we've done an end run, which is allowed in cases like Datacom to around the usual executory contract language, this from the countryman test from Exide, et cetera. Your Honor, that's where I'm saying that paragraph three is a far cry from that, because paragraph three doesn't mention materiality. So let's go to Exide, right? And Exide looked at New York law, New York court appeals case as to when it is material. And that's a breach in a contract which substantially defeats the purpose of that contract that can be grounds for rescission. Okay? So here rescission would not just be not pay, it would not be, doesn't just relate to those contingent payments. A rescission here would mean that the Weinstein companies were entitled to the initial payment, the initial compensation. And if Cohen were entitled to rescind, he would be able to get his rights back. But Your Honor, after, what's clear is that after 2011, after the production and release of that film, there are no rights to rescission anymore. Okay? Cohen contractually agreed that he had no right to get this intellectual property back. There's no forfeit right for the initial payment. Now, and if you look at what they refer to the indemnification rights and non-injunction rights, the non-injunction right is just basically an agreement not to breach in the future. So, because clearly to seek an injunction after you've signed away the rights is a breach of that contract, a denunciation of the contract, and is probably frivolous. The indemnification provision, Your Honor, goes to, if you look to paragraph 14, which is right above the indemnification, where it talks about the representations, warranties, and undertakings, they all relate to Cohen's right to transfer the intellectual property. Okay? So, the Weinstein companies were indemnified against an act by Cohen, or a representation by Cohen, that he didn't own the intellectual property, that it wasn't his intellectual property, or that he had sold it twice. So, once again, it all goes back to that performance, the performance of the delivery of the intellectual property. And I think it's important here, and I would like to answer the question, actually, that Ms. Butcher posed, how the Bankruptcy Court should determine whether a contract is need to have an evidentiary hearing where the inferences that the court can draw are clear. Okay? And we cited support in the Merrill Lynch case for that. Here, determining the substance of the contract is pretty easy. The contract itself, okay, refers to itself as a work-for-hire contract, is a particular type of contract, which has come up in the bankruptcy context before. And there are two cases that are right on point, Quintex and Stein and Day. Quintex involved a performance by the actor George C. Scott, under the very similar circumstances. Okay? And the same type of performance obligations. And that case was found not to be, and that contract was found not to be executor. So here, the Bankruptcy Court... Those contracts didn't have anything close to Paragraph 3. I mean, let me just, if this picture is produced, let me look at opening to Paragraph 3. With Cohen as the producer, and Cohen fully performs all required services and obligations, and in relation to the picture, and is not otherwise in breach or default, Cohen is entitled to contingent compensation. So let's say there's an indemnity provision here, which there is. And the third party sues, and the company asks for indemnity. And Cohen says no. So therefore, you say he's in breach or default of the asset purchase agreement. Will you pay him, continue to pay him contingent compensation? No, Your Honor, but I don't think that that renders this provision material, or renders the contract executory. Because once again, for this indemnification, if you look at the language of the indemnification, for it to be implicated, that would mean that a representation or warranty, as of the time of the release of the film, that goes right to the core, was false. So everything is about the delivery of the contract. Everything is about performance, which was completed in 2012, Your Honor. It was fully completed in 2012 when the film was released. This provision, and it also doesn't, you know, if he does, there's no provision, as I said here, that would entitle either party to rescission. Okay? In fact, everything in this contract prevents rescission. Test isn't so much rescission or termination. I mean, you've stated that in your briefing, but I think the test is whether the breach would excuse performance by the other party. That's the countryman test. So in this case, it looks like what you just said to me, if there's indemnity provision and it's breached by Cohen, then he is no longer entitled to performance by you for contingent compensation. And that seems like you just stepped into a well there, a well of a problem. With all due respect, Your Honor, I disagree. Okay? Because the countryman test... You disagree with the test? No, no, I don't disagree to the test, but the test goes on to say constitute a material breach. Okay? And here the contingent, this provision, okay, which is just in the description of contingent compensation, and has been pointed out, is not in the remedies section. So I don't think we should give it too much weight. But it still does not permit recovery of the initial payment that was granted. So it's only the continued performance going forward. But Ms. Butcher's point is that there is a plus here. And similar to some cases like Datacom, like Hawker Beachcraft in the Southern District, I think, of New York, and Avangard Properties, you can contract around that. And the question is, does this single sentence, admittedly, not in a remedy section, I agree with that, does that give them the right not to perform, give you the right not to perform, if in any way, no matter what it is, Mr. Cohen does not abide by the agreement? And I just picked out one provision that still exists called the indemnity provision. Well, Your Honor, but I think you have to look at cases and look at the performance in that context. So in general, Datacom, it was an agreement not to compete going forward. That's very different than an indemnification. Let's pick out something that's probably more real world. Let's say that Silver Linings Playbook becomes like It's a Wonderful Life. And it has this incredible run many years afterwards. And Cohen attempts to assign the contract and his right to receive contingent compensation to X. And there's a restriction on that. It's in the agreement. Even though it's in boilerplate, there is a restriction. And he attempts to do that. And you say you just violated the asset purchase agreement that we entered into. Are you going to pay him contingent compensation that that assignee of Cohen? Well, first of all, Your Honor, let's go to the assignment. I also think I think we have to recognize that just stopping the payment of contingent compensation, which is just one of the elements of the compensation, it doesn't defeat the entire contract and materiality. Is your answer to DeGembro's question that no, you would not then continue to pay? Would it excuse your performance of paying contingent compensation? I have to look at the assignment provision, Your Honor. And I'm not, you know, that provision, and we're talking about a hypothetical here. I'm not sure that that provision would, in fact, excuse payment going forward. If there is uncertainty about the extent of continuing obligations between the parties, why isn't there at least a disputed issue of material fact here? Well, as I said, Your Honor, the bankruptcy judge here was entitled to make the logical and reasonable inferences based on this contract, based on the denomination of this contract as a work-for-hire contract, which has a specific meaning in the industry, and which has been interpreted by bankruptcy courts in the past. So, and longstanding cases, too, Quintex and Stein and Day have been around for a very long time, and there is no contrary case on the work-for-hire. And this contract, as I said, calls itself a work-for-hire contract. So, you have here a bankruptcy judge who is presiding over a Chapter 11 case involving hundreds of such contracts, and is involved with presiding over the conduct of this business and the distribution and sale of its assets. So, she's in a unique position. But we're looking at this contract and the intent of these parties. Yes, Your Honor, but this contract in which, you know, the talent parties are arguing, these contracts are all the same and go to the heart of the business, okay? It goes to how this business was conducted. So, this contract has to be looked at in the context of the contracts of the company and the business of the company, and it has to be looked at in the context of a work-for-hire agreement. So, here, the bankruptcy court did, and the district court went through the same analysis, looked at the substance of the contract and drew the logical inferences, as the court is entitled to. We didn't, and they cannot point to any evidence that they would, they didn't attempt to introduce evidence on materiality, okay? They could have, in response to summary judgment, brought evidence of materiality and reliance on this provision. In fact, I think it's, you know, it would have been evidence that this provision was immaterial by the fact that there have been years of payments not made, I'm sorry. So, I mean, I think you've made those points, at least heard you on materiality. Do you have thoughts on kind of just supposing materiality, just suppose materiality? What are your thoughts on performance? I'm sorry, I'm not sure I understand the question, your honor. Well, I mean, I guess the thought is, I think I'm hearing you say that this is not a material obligation, right? But if it were a material obligation, couldn't you still prevail if you said it was, you know, there's no remaining unperformance to be done, you know? And unperformance is kind of a strange way of calling it, but there's nothing presently at the date we assumed and assigned this for us to perform. And if there's nothing, I mean, maybe that's not the direction you want to go. No, but your honor, I was thinking that that subsumed into materiality, but there was nothing. And the point I'm trying to make is that if there is no issue, and you think the fact that this bankruptcy case was filed six years after the release of this film. So, I guess, just to clarify more, I mean, I guess where I'm getting at is it's one thing to say someday maybe there could be an issue that might trigger performance. Someday maybe there could be, or breach, or anything else like that. Someday that might exist. But as of that date, as of the date that, you know, the petition date, there was nothing. Well, so if that's the case, then doesn't that give a different reading to paragraph three? Yes, your honor, and I guess I was not clear, but I believe that that, you know, goes into the very different story. If as of the closing date, there was an outstanding claim that Cone had, did not have the authority to sell this, or that Cone had sold it twice, or that Cone wasn't actually the producer. And there was none five and a half years later. So, if that were there, that's, so if such claim were present, this is a different game. Because, but in the absence of any such claim, it's hard to say that there is an unperformance of indemnification when there's no indemnification that's been triggered. Is that the point that maybe you're calling a materiality? I'm thinking of it as performance. And if we think about it, if there was a claim at that time, okay, if there was a claim at either the closing date or the filing date, and exists, if somebody was out there, whether there was a case that was pursued or not, but somebody out there making a claim saying, Cone didn't make this movie, he has no right to transfer it, or I own this movie, then the indemnification provision would be material. Because you're buying an asset, and you want the indemnification, because with that comes a litigation. But here, five and a half years later, there was no dispute. There was no issue. So there was no materiality. But in terms of what is deemed to be materiality, if, and I ask you this question, I'm going to ask it again. If Cone performs all the required services, and is not in breach or default of the agreement, he's entitled to receive contingent compensation. Cone proposes to transfer his rights to contingent compensation to AMBRO. Will you pay AMBRO the contingent compensation that was otherwise to go to Cone, in effect, a violation of the agreement? Well, the agreement does say that he won't transfer it. I'm not sure that transferring it is... Let's say that that's a hypothetical. There are restrictions. Let's say he violates the restrictions on transfer. Okay. Well, Your Honor, I think that that would render every contract... Are you going to pay it to AMBRO? I mean, how can... I don't think I can answer that question. I mean, I'm not the client. I'm not sure that you could terminate or stop payments at that point, not whether they would. It would seem the easy answer is, if it's not a material violation, then we're not going... We'll continue to allow the contingent compensation to be paid to the successor of Cone. But you keep backing off of making a definitive answer. And every time you do that, what you're really saying is that in your client's mind, it is a material obligation. Absolutely not, Your Honor. With all due respect, you're asking me a question about something... I mean, I could easily say, yes, we'll make the payment, but I don't have the ability to say that, right? I mean, I'm not the person making the payment. Would my client likely make the payment? Sure, I don't think they care. I mean, the only way to reconceptualize it is, would you be legally obligated to make the payment? Yeah, I think that's a different question than, would we or would the client do that? All right. So... Legal obligation seems to come down to the intent and expectation in the contract. And from your responses, it appears that's really unclear. Well, no, I don't think that that's... I think we're picking out a hypothetical that wouldn't affect my client at all, okay? Because assigning a mere payment right and not assigning the rights would not affect my client at all. So I don't think it would be material, okay? There's no... The contract here is for a movie, for the production of a movie, okay? If he were to assign, if Cone were to assign his rights to receive payment, that would have nothing to do with the right to use and exploitation of the film. And the substance and the point of the agreement is set forth right in paragraph nine, okay? And it says, the results and proceeds of lenders and artists' engagement and services here under in connection with the picture shall be deemed works made for hire, specially ordered or commissioned by company in connection with a motion picture and or audiovisual work. Companies shall exclusively own all now known or hereafter existing rights of every kind throughout the universe in perpetuity in all languages, okay? No... And it says further on, no breach of this agreement by either party shall in any way affect company's ownership of the picture or all rights therein. So the substance of the contract is clear. The material provisions of the contract are clear. I can't imagine why my client would care if the contingent payments were going to somebody other than Cone. Whether or not that would impact their obligation to make the payments, I don't know, but I don't think it's a hypothetical that really relates to the substance of this agreement. The substance of this agreement is the delivery of a motion picture. That was done, okay? And the language in paragraph three that is relied on doesn't say that it is a material obligation. It just says, and are not otherwise in breach or default here. I mean, that could be throwaway language that doesn't render the contract material, especially when you look at paragraph nine, which talks about the character and substance of this contract. You look at the film and the intellectual property rights are pertinent to that film. So I don't think we can give, we could, we can or should give too much weight to a throwaway phrase in a section of the contract that is most dedicated to the calculation of this contingent compensation. And the contingent compensation, remember, only comes into play if the film is a success, okay? And if it meets, you know, these adjusted defined receipts, et cetera. So, I mean, let's, we have to put things in context. Now, because payments that he didn't get for the six years between the release of the film and the filing of the Weinstein Company's petition, and he's reaching back trying to get those contingent payments. Now, I think the appellant is trying to put inordinate weight on that language. But if you look at those, I think it's five words, or I'm sorry, it's seven words. In the context of this agreement, in context of much more substantive provisions, I don't think it is realistic to treat that as taking an immaterial obligation and making it material. Any further questions of my colleagues? All right. Thank you very much. Judge, did you have a question? Or said no. Okay. Ms. Butcher, we'll get you on rebuttal. Your Honor, thank you. I recognize that my time is short. I'd like to make three quick points, if I may. First, we started this discussion with why would the, why would Spyglass want the Cohen agreement at all? I would like to point out that as Your Honors have recognized, the IP rights were transferred here prior to the petition date. If there was no value in the Cohen agreement, they could simply have purchased those IP rights as an asset through the bankruptcy. They took on this contract, and then we were ordered by the bankruptcy court to pay contingent compensation on a go-forward basis, specifically because they chose to take this contract. My second point, Your Honor, is that although Mr. Califano has argued for a rescission requirement of an executory contract, no other case that he has cited or that I have been able to find has adopted that standard. Every case on which he relies speaks to ceasing the future or the continued performance under the contract. In no case did they require that the parties be obligated to unwind the contract. In this case, as he suggested, that Mr. Cohen would have to repay money and somehow unproduce a film. That is simply not the standard. And if you were to look at the Supreme Court's decision in 2019 in technology, it carefully analyzes what it means to reject a contract under Section 365, and it says that is not a rescission standard, it is a breach standard, and the difference being that the rights that existed before the breach continue to exist. They are not unwound, and it specifically says the parties are not returned to their pre-contracting position. But it all comes down to whether it's executory or not, in order to get technology or mission products, whatever you want to call it. My only point is that the Supreme Court's decision does not require an executory contract. If I could reach my third point quickly, Mr. Califano has argued here today, and in his brief, for what amounts to a bright-line rule that a work-for-hire contract is by definition non-executory the moment that the work is released and the rights are transferred. He makes that argument for a bright-line rule based only on two cases that are each 30 years old or more. One, his main case, being the Kintex decision out of the Ninth Circuit. And although the Kintex decision decided that the Scott contracts, the TV contracts, were not executory, it also considered another group of contracts, the Preminger contracts. And in that analysis, the parties had argued for a bright-line rule based on the subject of the contract and the position of the debtor. And there it was a licensing agreement, and they argued that in all the cases they had found where a contract had involved a license and had been found to be non-executory. And the Ninth Circuit was careful and deliberate to explain that there are no bright-line rules when it comes to an executory contract based on the subject of the contract or the position of the debtors. And it said instead that it has to turn on quote the particular rights and duties of each contracting party to the contracted issue. And in Kintex and in Stein and Day, although those decisions came out to hold that the relevant contracts were not executory, they did so only after a detailed analysis of each provision of the contract and never purported to create a bright-line rule. If even if they had purported to do so, Your Honor, which they do not, I would remind you also those cases were decided more than 30 years ago, more than 15 years before this court's decision in General Data Com. I believe those decisions are consistent with General Data Com, but they in no way overrule it, Your Honor. All right, thank you very much. Thank you for both counsel for being with us. I would ask that a transcript be prepared of this oral argument and that counsel split the costs. Yes, Your Honor, and if I may, since I believe both counsel in this case are coming from California, given the difficulties in travel right now, I would like to thank you for allowing us to participate. No, it's the right thing to do and it also makes life easier for everybody, so thank you. I know we went way past the usual time, but it's an interesting case. Thank you, Your Honor. Thank you.